Filed 5/10/16  P. v. Flores CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>JUAN MELESIO FLORES,<br><br>    Defendant and Appellant. | D067587<br><br><br><br>(Super. Ct. No. SCD253009) |

APPEAL from a judgment of the Superior Court of San Diego County, Robert F. O'Neill and Polly H. Shamoon, Judges.  Affirmed.

Denise M. Rudasill, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, A. Natasha Cortina and Seth M. Friedman, Deputy Attorneys General, for Plaintiff and Respondent.

Juan Melesio Flores was charged in a second amended information with the commission of 17 felony sex offenses against two minor males:  two counts of oral

copulation of a person under 18 years old (counts 1-2: Pen. Code, § 288a, subd. (b)(l)), 11 counts of lewd act on a child of 14 or 15 years of age (counts 3-13: Pen. Code, § 288, subd. (c)(l)), and four counts of oral copulation by a person over 21 years old with a person under 16 years old (counts 14-17: Pen. Code, § 288a, subd. (b)(2)). Two of the 17 counts (counts 1-2) related to alleged victim Brandon J. and the remaining 15 counts (counts 3-17) related to victim Derek M.

On November 24, 2014, a jury convicted Flores of one count of oral copulation by a person over 21 years old with a person under 16 years old, involving his oral copulation of Derek in December 2013, in violation of Penal Code section 288a, subdivision (b)(2), as charged in count 14. The jury could not reach a verdict as to the remaining 16 counts (counts 1-13 & 15-17). The court declared a mistrial as to those counts and later granted the People's motion to dismiss them.

At sentencing the court followed the recommendations in the probation officer's report, denied Flores probation, sentenced him to the upper term of three years in state prison for his count 14 conviction of oral copulation by one over the age of 21 on a person under the age of 16 (Pen. Code, § 288a, subd. (b)(2)), and ordered him to register as a sex offender (Pen. Code, § 290).

Flores appeals, contending (1) the court abused its discretion and violated his federal constitutional right to due process by admitting nine photographs of naked young men taken in bathrooms that were downloaded from his cell phone, and by admitting testimony describing sex acts between men shown in two other photographs downloaded

2

from the phone, because this evidence was unduly prejudicial under Evidence Code[1] section 352 and thus inadmissible under section 1101, subdivision (b) (section 1101(b)); (2) his sentence must be reversed because the court abused its discretion by denying probation and imposing the upper prison term of three years; and (3) the court erred by ordering him to register for life as a sex offender.  We affirm the judgment.

## FACTUAL BACKGROUND

A. *The People's Case*

1. *Derek's testimony*

Derek was 16 years old when he testified at trial in this case in late 2014.  In 2009, when he was about 11 years old, Derek joined Flores's karate dojo in Tierrasanta.  At first, Derek was in a class for younger children that had lessons twice a week.  At around age 13, Derek moved into a class of 13- to 17-year-olds that met three times each week.

Flores, who was then in his thirties, cultivated a friendship with Derek as he got older, and Derek viewed him both as a friend and as a father figure.  Derek confided in Flores and shared personal details of his life, such as the fact that he suffered from Asperger's, his parents divorced, and he was not able to bond with his stepfather.

Derek testified that when he was about 13 or 14, he began giving Flores shoulder massages at Flores's request.  Within a year or so, Flores started giving Derek massages.

---

[1]     All further statutory references are to the Evidence Code unless otherwise indicated.

3

Sometime around January 2013, Flores began touching Derek's genitals. Derek testified that the first time this happened, Flores was sitting next to him in Flores's dojo office while he (Derek) was standing and playing a computer game. Flores slid his hand up Derek's shorts and boxer underwear, and rubbed Derek's scrotum, skin to skin.

After this first incident, Flores touched Derek this way at least once a month for a few seconds to several minutes each time. Derek testified this usually happened when they were alone in the dojo before or after class, but Flores also did it once in his car while giving Derek a ride to the dojo. Flores would have "ninja nights" for his students to celebrate special occasions like tournaments or holidays. A ninja night was a party at the dojo where the students could eat and play video games and stay all night if they wanted to.

Derek testified that, at a ninja night in October 2013 after most of the children were asleep and the others were preoccupied with video games, Flores asked him to massage his back. This was something that Flores had not previously asked him to do.

Two months later, on December 14, 2013, Flores held a Christmas party at the dojo. The party ended at about 1:00 p.m., and Derek, who was then 15 years old, was left alone with Flores to clean up for a ninja night later that same day. Derek testified that Flores locked the doors, turned off the lights, and asked Derek for a massage. Flores made sure that he and Derek were in a spot where no one looking in from the outside could see them. Derek began massaging Flores's back and then it progressed to a full-body massage. Flores stuck his hand up Derek's shorts during the massage and touched his scrotum.

4

Derek testified that Flores then told him it was his turn. Flores told him to take off his shorts and, after Derek removed his shorts, Flores put Derek's penis and scrotum in his mouth and gave him a "blow job."[2] Derek had an erection, and Flores remarked that Derek was "hard" and "big." Flores also rubbed Derek's penis with his hands. This sexual activity stopped when two of the students returned and pounded on the locked door. Derek testified that this was "kind of like a saving grace."

Derek testified that although he was "still in shock" about that had happened, he decided to stay for the ninja night. He lied when he texted his mother that everything was fine. Derek testified he was concerned that calling the police to the dojo would "scar[e] all of the kids in the ninja night."

During the ninja night, Flores sat down next to Derek and touched his scrotum. Flores repeatedly asked Derek to come into his office, and Derek tried to avoid doing that by not responding or telling Flores, "Later." Derek eventually relented and went into the office with Flores. Flores had moved his desk to make room for an air mattress. Once Derek was inside the office, Flores used a pen to jam the door closed. Flores told Derek, "Surprise me." Derek thought Flores wanted some cake, but Flores clarified by saying, "Butt, mouth or penis."

Derek testified he then lay face down on Flores, who was also face down, and Derek used his penis to rub Flores's buttocks for a few minutes. Flores then turned over and Derek orally copulated him for several minutes until Flores ejaculated. Flores also

---

2    This act of oral copulation was the basis for Flores's conviction of count 14 (Pen. Code, § 288a, subd. (b)(2)) in this case.

orally copulated him, but Derek did not ejaculate. Derek told Flores he would do it himself and started to masturbate in Flores's chair. Derek stopped masturbating when somebody knocked on the door. Derek went to the bathroom after telling Flores he was going to finish masturbating there, but Derek did not ejaculate there. He then resumed playing video games until he fell sleep.

Derek also testified that when he awoke later that night at about 1:00 a.m., Flores was standing over him. Derek went back to sleep. Later, Derek woke up and found Flores lying next to him. Flores pulled down the front of Derek's shorts and rubbed his penis against Derek's penis. Flores then orally copulated Derek, "switch[ing]" between sucking on Derek's penis and sucking on Derek's scrotum. Flores told Derek, "I want you to blow a load on me while I am sucking it." Derek did not ejaculate.

At around 9:00 a.m. the next morning, Derek's mother picked him up at the dojo. She could tell something was wrong. As they began driving away from the dojo, Derek, who was visibly shaking, told his mother what happened. Derek's mother then drove him to the police department to report Flores's conduct, and then they drove to the hospital for a sexual assault examination. At the hospital, various parts of Derek's body were swabbed for DNA.

Erik Bieschke, a criminalist and an expert on forensic DNA analysis, testified that there was mixture of only two people's DNA on Derek's penis, one of which was from a predominant, overwhelming contributor. Derek's DNA profile matched the nonpredominant contributor. Flores's DNA profile matched the predominant contributor. The chance of the predominant profile occurring randomly in a Hispanic person like

6

Flores[3] is one in 21 quadrillion, which Bieschke characterized as "extremely rare." He also testified that a portion of one of Derek's penile swabs in this case from which Flores's DNA profile was extracted also tested positive for amylase, which is a major component of saliva.

Flores's DNA profile was also consistent with the major contributor to a mixed DNA sample taken from Derek's scrotum. In addition, DNA consistent with that of Flores was found on Derek's neck, chest, and hands. (3 RT 372-373.)

2. *C. and Brandon*

Brandon was 19 years old when he testified at trial in this case in late 2014. In 2012, when Brandon was still 16 years old, Flores engaged in the same kind of grooming behavior and escalating physical touching with Brandon, who, like Derek, was one of Flores's karate students. Flores's physical contact with Brandon progressed from massages when Brandon was about 15 years old to the touching of Brandon's genitals when he has 16, and then to Flores's oral copulation of Brandon on two occasions. Both instances of oral copulation occurred in Flores's dojo. Flores also photographed Brandon when Brandon was not wearing a shirt. Brandon stopped going to the dojo after the second oral copulation incident in late 2012 or early 2013 when Brandon was 17 years old. In early January 2013 Brandon told his parents what had happened, and his father called the police.

---

3    Flores testified he is Hispanic.

7

Under sections 1101(b) and 1109, the court admitted the testimony of C.T., who testified he also had been sexually molested by Flores. Beginning in 2010, when he was 15 or 16 years old, C. worked at Flores's dojo for about two years. Flores groomed C. and engaged in escalating physical contact that included mutual massages with their shirts off, cuddling, Flores's hugging and kissing C., and his touching C.'s buttocks and penis. On one occasion when C. was around 16 or 17, he texted Flores that he was going to take a shower and Flores responded, "Cool, take a picture." C. texted the photo to Flores.

3. *Sexually suggestive and explicit photographs recovered from Flores's cell phone*

A forensic examination of Flores's cell phone resulted in the recovery of photographs depicting naked or semi-naked boys that, as the court noted during in limine proceedings, appeared to be somewhere between 16 and 19 or 20 years old, but possible under 18. The following nine photographs found on Flores's phone, which were admitted into evidence, showed: (1) a boy wearing only underwear with his hand inside the front of his underwear (exhibit 23); (2) a naked boy in the shower covering his genitals (exhibit 24); (3) a male standing in a bathroom and wearing only underwear (exhibit 25); (4) a naked young male with a semi-erect penis posing sideways and taking a selfie photograph of himself in a bathroom mirror (exhibit 26); (5) a young naked male holding his erect penis and taking a selfie photograph of himself in a bathroom mirror (exhibit 29); (6) a young male standing sideways, holding his erect penis, and taking a selfie photograph of himself in a bathroom mirror (exhibit 30); (7) a young male wearing only

8

underwear and pulling his underwear down to expose part of his erect penis, and taking a selfie photograph of himself in a bathroom mirror (exhibit 31); (8) a shirtless boy in blue jeans posing in front of a mirror (exhibit 32); and (9) a young naked male with an erection in the shower (exhibit 33).

Also recovered from Flores's cell phone was a photograph of two men engaged in anal sex, and another photograph of two men engaged in oral sex. The jurors did not see these photographs, but they did hear a brief description of them. Specifically, Detective Kevin McNamara of the San Diego Police Department testified there was "a photograph on the phone . . . depict[ing] an act of anal sex between two [naked] men" and "a photograph that showed an act of oral copulation between two men."

B. *Defense Case*

Flores testified in his own defense. He admitted that he downloaded from the Internet the photographs of boys that were retrieved from his cell phone, and he testified he did so because "[i]t is porn" and "I am attracted to men." He also admitted he downloaded the photographs depicting anal sex between two men.

Flores further admitted he sometimes massaged his students, including C. and Brandon, or had them massage him, but he claimed he did so for legitimate reasons.

Flores denied that he committed any sexual acts with Derek, Brandon, or C. He portrayed his relationship and any physical contact with them as that of a platonic mentor, friend, or father figure.

9

DISCUSSION

## I. *ADMISSION OF EVIDENCE OF SEXUALLY SUGGESTIVE AND EXPLICIT PHOTOGRAPHS DOWNLOADED FROM FLORES'S CELL PHONE* (§§ *1101(B)*, *352*)

Challenging his conviction, Flores contends the court abused its discretion and violated his federal constitutional right to due process by admitting the nine photographs of naked young men taken in bathrooms that were downloaded from his cell phone, and by admitting testimony describing sex acts between men shown in two other photographs downloaded from the phone that were not shown to the jury, because this evidence was irrelevant and unduly prejudicial under section 352 and, thus, it was inadmissible under section 1101(b).  We reject this contention.

A.  *Background*

The prosecutor filed a motion in limine asking the trial court to allow the introduction under section 1101(b) of sexually suggestive photographs downloaded from Flores's cell phone and showing young men (other than Derek and Brandon) who (the court found) appeared to be somewhere between 16 and 19 or 20 years old, who were naked or partially clothed in a bathroom, and some of whom had an erect penis; and two other photographs showing sex acts between males.

Defense counsel objected that the photographs were not relevant and they were unduly prejudicial within the meaning of section 352 (discussed, *post*).

The court overruled the defense objections to the photographs showing the young men in a bathroom or shower, admitted into evidence nine of those photographs, and excluded the two photographs that depicted anal and oral sex but allowed testimony

describing those photographs.  Finding the photographs and related testimony relevant and not unduly prejudicial, the court explained:

> "Again, I think the photographs are *relevant* to prove the charge because there . . . are a number of allegations that involve touching and the *intent* behind the touching, so I do think they are relevant.
>
> "With regard to [section] 352, I think the test is not whether they are prejudicial.  The only reason the People are trying to admit them is because they are prejudicial.
>
> "The test is [whether] they are *unduly prejudicial* based on the probative value, and I think when you look at the pictures, it is clear that there is a connection with what happened in this case.  So are they prejudicial?  Yes, in that they tend to show and prove the People's case, which is prejudicial to the defendant.
>
> "*Are they unduly prejudicial*?  *I don't think so*, especially now that we have narrowed down the photographs to the bathroom and/or shower scenes, which is consistent with the evidence in this case. [¶] . . .
>
> "I . . . was most concerned in narrowing down the photographs. They go to the heart of the *intent* in this case, especially given that all of the pictures that the court received [from the prosecutor after she narrowed them] are of boys that looked to be somewhere between 15 and 18 or 19 years old.
>
> "They are all in some unclothed state, most of them completely naked, but certainly with erect penises, and not just erect penises, but somehow holding or depicting or showing and bringing attention to the fact they are erect penises.
>
> "So with that, I think all 11 photographs are *relevant* and I will allow those."[4]  (Italics added.)

---

4     Ultimately, as discussed, *ante*, in the factual background, nine of the photographs were admitted in evidence and the court allowed testimony describing the other two photographs that were not shown to the jury.

11

B. *Applicable Legal Principles*

a. *Section 1101*

Section 1101, subdivision (a) "prohibits admission of evidence of a person's character, including evidence of character in the form of specific instances of uncharged misconduct, to prove the conduct of that person on a specified occasion." (*People v. Ewoldt* (1994) 7 Cal.4th 380, 393 (*Ewoldt*).) Thus, evidence of other crimes or bad acts is inadmissible when it is offered to show that a defendant had the criminal disposition or propensity to commit the crime charged. (§ 1101, subd. (a).)

Section 1101(b) "clarifies, however, that this rule does not prohibit admission of evidence of uncharged misconduct when such evidence is relevant to establish some fact other than the person's character or disposition." (*Ewoldt*, *supra*, 7 Cal.4th at p. 393, fn. omitted.) Specifically, section 1101(b) provides that nothing in that section "prohibits the admission of evidence that a person committed a crime, civil wrong, or other act when relevant to prove some fact (such as motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident . . .) other than his or her disposition to commit such an act."

"[T]he admissibility of evidence under section [1101(b)] depends on the degree of similarity between the uncharged act and the charged offense." (*People v. Zepeda* (2001) 87 Cal.App.4th 1183, 1210 (*Zepeda*), quoting *Ewoldt*, *supra*, 7 Cal.4th at p. 402.) The California Supreme Court has explained that for evidence of uncharged acts to be admissible under section 1101(b) to prove such facts as motive, intent, identity, or common design or plan, the charged offenses and uncharged acts must be "sufficiently

12

similar to support a rational inference" of these material facts. (*People v. Kipp* (1998) 18 Cal.4th 349, 369.) "The least degree of similarity (between the uncharged act and the charged offense) is required in order to prove intent." (*Ewoldt*, *supra*, 7 Cal.4th at p. 402.) To be admissible to prove intent, the uncharged misconduct need only be "sufficiently similar [to the charged offense] to support the inference that the defendant "'probably harbor[ed] the same [or similar] intent in each instance."'" (*Ibid.*; see *People v. Memro* (1995) 11 Cal.4th 786, 864-865 (*Memro*) [evidence of defendant's uncharged conduct of possessing sexually explicit photographs of young males ranging from prepubescent to young adult admissible as probative to show intent to sexually molest young boy].)

b. *Section 352*

If the trial court determines that uncharged misconduct is admissible under section 1101(b), it must then determine whether the probative value of the evidence is "'substantially outweighed by the probability that its admission [would] . . . create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury.'" (*Ewoldt*, *supra*, 7 Cal.4th at p. 404; § 352.)

"The prejudice which exclusion of evidence under [section 352] is designed to avoid is not the prejudice or damage to a defense that naturally flows from relevant, highly probative evidence. '[A]ll evidence which tends to prove guilt is prejudicial or damaging to the defendant's case. The stronger the evidence, the more it is "prejudicial." The "prejudice" referred to in [section 352] applies to evidence which uniquely tends to evoke an emotional bias against the defendant as an individual and which has very little

13

effect on the issues. In applying section 352, "prejudicial" is not synonymous with "damaging."'" (*People v. Karis* (1988) 46 Cal.3d 612, 638 (*Karis*).)

c. *Standard of review*

We review the trial court's rulings under sections 1101 and 352 for an abuse of discretion. (*People v. Lewis* (2001) 25 Cal.4th 610, 637.) We will not disturb the trial court's exercise of discretion except upon a showing that it "exercised its discretion in an arbitrary, capricious, or patently absurd manner that resulted in a manifest miscarriage of justice." (*People v. Rodriguez* (1999) 20 Cal.4th 1, 9-10.)

C. *Analysis*

The court did not abuse its discretion by admitting into evidence the nine sexually suggestive cell phone photographs of nude and seminude young males, and Detective McNamara's testimony describing two other cell phone photographs showing sex acts between males, because this evidence was admissible under section 1101(b) to show motive and intent. Flores was charged with (among other offenses) 11 counts of committing a lewd act on Derek, a child of 14 or 15 years of age, in violation of Penal Code section 288, subdivision (c)(l). To prove Flores committed these offenses, the prosecution was required to prove beyond a reasonable doubt (among other things) that he willfully committed the alleged act "with the intent of arousing, appealing to, or gratifying the lust, passions, or sexual desires of [himself] or the child." (Pen. Code, § 288, subd. (a).)

14

Here, the challenged cell phone evidence was admissible under section 1101(b) because it was relevant to the issue of whether Flores acted "with the intent of arousing, appealing to, or gratifying the lust, passions, or sexual desires of [himself] or [Derek]" (Pen. Code, § 288, subd. (a)). *Memro*, *supra*, 11 Cal.4th 786, is illustrative. In *Memro*, the California Supreme Court held that "sexually explicit . . . photographs . . . of males ranging in age from prepubescent to young adult" were admissible to show the defendant's intent to sexually molest a young boy in violation of Penal Code section 288 even though some of the photographs "depict[ed] youths in a manner that [was] not sexually suggestive." (*Memro,* at p. 864.) The Supreme Court reasoned that the "[d]efendant's intent to violate [Penal Code] section 288 was put at issue when he pleaded not guilty to the crimes charged" (*ibid.*), and "the photographs, presented in the context of defendant's possession of them, yielded evidence from which the jury could infer that he had a sexual attraction to young boys and intended to act on that attraction." (*Id*. at p. 865.) The *Memro* court concluded that "[t]he photographs of young boys were admissible as probative of defendant's intent to do a lewd or lascivious act" (*ibid.*) with the victim, who was 12 years old at the time the charged offenses were committed. (*Id*. at p. 811.)

Similarly here, Flores's intent to violate Penal Code section 288 was put at issue when he pleaded not guilty to the counts alleging he violated that section, and the evidence of the photographs retrieved from his cell phone, which were "presented in the context of [his] possession of them, yielded evidence from which the jury could infer that

he had a sexual attraction to young [males] and intended to act on that attraction." (*Memro*, *supra*, 11 Cal.4th at p. 865.)

Flores attempts to distinguish *Memro* by arguing that some of the photographs admitted in that case depicted prepubescent boys but, here, none of the cell phone photographs depicted prepubescent boys. He asserts that, "[b]ecause the photos in [this] case were not clearly of underage children they were much less relevant to show an intent to molest young males."

Flores's attempt to distinguish *Memro* is unavailing. The photographs of prepubescent boys were relevant to the issue of intent in *Memro* because the victim was a prepubescent 12-year-old boy. (See *Memro*, *supra*, 11 Cal.4th at p. 811). Here, neither of the two alleged victims—Derek and Brandon—was a prepubescent boy at the time Flores allegedly committed the charged acts of sexual molestation. They were young males in their mid-teens. The sexually suggestive photographs in question here depict naked or semi-naked young males that, as the court noted during the hearing on the People's in limine motion, appeared to be somewhere between 16 and 19 or 20 years old, but "maybe under 18."

Flores contends Detective McNamara's testimony describing the two photographs showing sex acts between males was inadmissible under section 1101(b) because he "did not deny he was homosexual" and, thus, "this evidence was not highly probative of any contested issue and it did not relate to the specific facts alleged in the instant case, the molestation of teenage males." This contention is unavailing. Flores

16

testified he "downloaded" the two photographs because he was "attracted to men." However, his admission he is attracted to men did not render those photographs irrelevant on the issue of whether he acted with the requisite "intent of arousing, appealing to, or gratifying the lust, passions, or sexual desires of [himself] or [Derek]." (Pen. Code, § 288, subd. (a).) The issue regarding intent was not whether Flores was sexually attracted to men; it was whether he was sexually attracted to teenage boys. (*Ibid*.) In any event, as the court observed during the hearing on the People's in limine motion, the males in all of the photographs, including the males in the two photographs depicting sex acts, appeared to be somewhere between 16 and 19 or 20 years old, but "maybe under 18."

Flores also contends the evidence of the cell phone photographs should have been excluded under section 352 because "this evidence was more prejudicial than probative." This contention is unavailing. The sexually suggestive photographs and Detective McNamara's testimony were damaging to Flores's defense precisely because they were highly probative, not because they "'uniquely tend[ed] to evoke an emotional bias against the defendant as an individual'" with "'very little effect on the issues.'" (*Karis*, *supra*, 46 Cal.3d at p. 638.) Although some of the photographs shown to the jury showed teenage boys "in sexually graphic poses [and] would undoubtedly be disturbing to most people[,] we cannot say [they were] substantially more prejudicial than probative, for [their] value in establishing [Flores's] intent to violate section 288 was substantial." (See *Memro*, *supra*, 11 Cal.4th at p. 865.) The

17

record shows the prosecutor selected the bathroom and shower photographs, and the court found them probative and admissible, in part because they tended to corroborate C.'s testimony that Flores asked him to take a picture of himself in the shower. As noted, the nine photographs admitted in evidence did not show any sex acts. In addition, the challenged evidence was not inflammatory by comparison to the testimony of Derek, Brandon, and C. about the acts of sexual molestation Flores allegedly committed.

Flores's reliance on *People v. Page* (2008) 44 Cal.4th 1 is misplaced. The defendant in that case was convicted of first degree murder with a lewd act special circumstance and of violating Penal Code section 288. (*Page*, *supra*, 44 Cal.4th at p. 6.) The victim was a six-year-old girl who had been brutally beaten, suffocated, sexually assaulted, and strangled to death. (*Ibid*.) The trial court admitted three pornographic magazines (out of more than 100 "hard-core" and "soft-core" pornographic magazines found in the defendant's apartment), two of which depicted post-pubescent women depicted to look younger and one of which showed women in bondage scenes. (*Id*. at p. 13 & fn. 7.) The *Page* court did not resolve the issue of whether the trial abused its discretion under section 352 in admitting the magazines and held that any error in their admission was not prejudicial. (*Id*. at p. 41.) The Court of Appeal acknowledged the magazines were probative of the defendant's intent, but noted they had less probative value than pornographic images in other cases. (*Id*. at p. 40.) The *Page* court observed that, although the models in the magazines were staged to look younger than they really were, none of them was made to appear as young as the six-year-old victim. (*Ibid*.)

18

Here, the challenged evidence of the cell phone photographs is more probative than the evidence the *Page* court addressed. Unlike the magazine photographs in *Page*, which depicted adult models who were much older than the child victim, the photographs in this case depicted teenage boys, not models, who were about the same age as the victims.

For all of the foregoing reasons, we conclude the court did not abuse its discretion or violate Flores's federal constitutional rights by admitting under section 1101(b) the challenged evidence of photographs found on Flores's cell phone.

## II. *CLAIMS OF SENTENCING ERROR*

Flores also contends his sentence must be reversed because the court abused its discretion by (1) denying probation and (2) imposing the upper prison term of three years. In response, the Attorney General argues that (1) Flores forfeited his claims of sentencing error by failing to object in the trial court, and (2) the court did not abuse its discretion. We conclude Flores forfeited his claims of error, which also fail on the merits.

### A. *Applicable Legal Principles*

The California Rules of Court[5] list the criteria a trial court considers in deciding whether to grant or deny probation. (Rule 4.414.) They also provide that, when choosing a prison term, the sentencing court may consider specified circumstances in aggravation or mitigation and any other factor reasonably related to the sentencing decision. (Rule

---

5    All rule references are to the California Rules of Court.

19

4.420; see rules 4.421 ["Circumstances in aggravation"], 4.423 ["Circumstances in mitigation"].)

    1. *Standard of review*

"A sentencing court enjoys broad discretion in determining whether to grant or deny probation. A defendant who is denied probation bears a heavy burden to show the trial court has abused its discretion." (*People v. Mehserle* (2012) 206 Cal.App.4th 1125, 1157.) Relevant criteria enumerated in the California Rules of Court pertaining to the grant or denial of probation "must be considered by the sentencing judge, and will be deemed to have been considered unless the record affirmatively reflects otherwise." (Rule 4.409.) A trial court's denial of probation after consideration of those criteria on the merits is almost invariably upheld. (*Mehserle*, at p. 1157; 3 Witkin & Epstein, Cal. Criminal Law (4th ed. 2012) Punishment, § 638, p. 1037.)

A trial court's sentencing decision is reviewed for abuse of discretion. (*People v. Sandoval* (2007) 41 Cal.4th 825, 847 (*Sandoval*).) "[D]iscretion is abused whenever the court exceeds the bounds of reason, all of the circumstances being considered." (*People v. Giminez* (1975) 14 Cal.3d 68, 72.) The existence of a single aggravating factor is legally sufficient to support the imposition of an upper term. (*People v. Black* (2007) 41 Cal.4th 799, 813.)

    B. *Analysis*

    1. *Forfeiture*

We first conclude that Flores forfeited his claim that the court abused its sentencing discretion by denying probation and imposing the upper prison term of three

20

years for his count 14 conviction. In support of his claim of sentencing error, Flores asserts the court "err[ed] by failing to grant probation and imposing the upper term . . . because the mitigating factors so heavily unquestionably outweighed the aggravating factors." Thus, Flores is complaining that the court misweighed the various mitigating and aggravating factors. He acknowledges that he "did not object after sentence was pronounced."

In *People v. Scott* (1994) 9 Cal.4th 331 (*Scott*), the California Supreme Court held that a party in a criminal case may not raise on appeal "claims involving the trial court's failure to properly make or articulate its discretionary sentencing choices" (*id.* at p. 353) if the party did not object to the sentence at trial, provided the party had a "meaningful opportunity to object." (*Id*. at p. 356.) The *Scott* rule applies to "cases in which the stated reasons allegedly do not apply to the particular case, and cases in which the court purportedly erred because it double-counted a particular sentencing factor, *misweighed the various factors*, or failed to state any reasons or give a sufficient number of valid reasons." (*Id*. at p. 353, italics added.)

*People v. Superior Court* (*Dorsey*) (1996) 50 Cal.App.4th 1216 (*Dorsey*) illustrates what constitutes a failure by a trial court to provide a "meaningful opportunity to object" at sentencing. In *Dorsey*, the trial court placed the defendant on probation in the "interests of justice," even though he was presumptively ineligible. (*Id*. at pp. 1221-1222.) After asking the defendant whether he accepted the terms of probation, the trial court immediately declared a recess without hearing from either party. (*Id*. at pp. 1223-1224; see *People v. Gonzalez* (2003) 31 Cal.4th 745, 752 (*Gonzalez*).) Because of the

21

immediate recess, the *Dorsey* court held that "the prosecutor had no opportunity, meaningful or otherwise, to object." (*Dorsey*, at p. 1224; see *Gonzalez*, at p. 752.)

Here, Flores forfeited his claim that the court abused its sentencing discretion in denying probation and imposing the upper prison term of three years because he is complaining on appeal that the court misweighed the various mitigating and aggravating factors, he had a meaningful opportunity to object to the court's discretionary sentencing choices during the sentencing hearing, and he did he not raise his objections to the sentence in the trial court. (*Scott*, *supra*, 9 Cal.4th at pp. 353, 356.) The record shows the court did not announce a tentative ruling at the sentencing hearing, and it denied probation and pronounced sentence after considering the probation officer's report, Flores's statement in mitigation, the People's statement in aggravation and a written statement by the victim (Derek), and after hearing additional arguments by both counsel and the testimony of Derek's mother.

The record also shows that, after pronouncing the sentence and stating its reasons, the court did not immediately declare a recess. Rather, the court had a discussion with Flores's counsel and the prosecutor about various matters, during which defense counsel could have raised objections concerning the sentence, including the court's weighing of mitigating and aggravating circumstances. The court stated it could "set a status hearing or just retain jurisdiction," and the prosecutor responded by asking the court, "May I ask the victim's mother really quickly what she wishes?" The court replied, "Yes." Defense counsel responded, "We don't need a status hearing at this time." The court then

22

discussed other matters with both counsel. Flores acknowledges on appeal that he "did not object after sentence was pronounced."

Unlike the trial court in *Dorsey*, the court in this case did not immediately declare a recess without hearing from either party. Nothing in the record suggests that the court would not have allowed counsel to object to the manner in which the court weighed the aggravating and mitigating circumstances in deciding to deny probation and impose the upper term.

Citing *Gonzalez*, *supra*, 31 Cal.4th 745, Flores claims he did not forfeit his claim of sentencing error because "the trial court stated it was denying probation and imposing an upper term sentence based upon the criminal planning and the taking advantage of a position of trust factors without indicating the sentence was tentative and without telling the parties they could object."

Flores's reliance on *Gonzalez* is unavailing. In *Gonzalez*, as the California Supreme Court implicitly recognized in that case, the defendants had a meaningful opportunity to object *after* the trial court pronounced the sentences and stated its reasons, as shown by the fact that they *did* object on one of the three grounds they raised on appeal. (*Gonzalez*, *supra,* 31 Cal.4th at p. 755.) Even though the trial court had not issued a tentative ruling regarding its intended discretionary sentencing choices, the *Gonzalez* court applied the *Scott* forfeiture rule and held that because the defendants did not object to their sentences in the trial court on two of the three grounds they asserted on

23

appeal, they could not raise on appeal claims based on those two grounds.[6] (*Gonzalez,* at p. 755.)

For all of the foregoing reasons, we conclude that by failing to object in the superior court to the court's discretionary decisions to deny probation and to impose the upper three-year prison term after having an opportunity to do so at the sentencing hearing, Flores forfeited the right to seek review of those decision on appeal. (*Scott*, *supra*, 9 Cal.4th at pp. 353, 356.)

2. *Merits*

Even if Flores had not forfeited his claim, it would fail on the merits. The court identified the same two reasons for denying probation and sentencing Flores to the upper term: (1) the criminal planning and sophistication of his crime, and (2) his taking advantage of a position of trust. Flores does not dispute that these are valid factors supporting the denial of probation and the imposition of the upper term. (See rules 4.414(a)(8) & (9), 4.42l (a)(8) &(11); *Scott*, *supra*, 9 Cal.4th at p. 350, fn. 12 [observing that "the same fact may be used both to deny probation and to impose the upper term"].) Thus, that the mitigating factors purportedly outnumbered the aggravating factors is of no moment here because a single aggravating factor is enough. (*Sandoval*, *supra*, 41 Cal.4th

---

6    The Supreme Court, however, stated that, "[b]ecause the [trial] court had not previously notified the parties that it intended to rely on defendants' firearm use as a reason for its sentence, it should have *more clearly* given the parties a meaningful opportunity to object by saying it was announcing proposed sentences for each defendant and its reasons for the sentences, that the prosecutor and defendants were entitled to object, and that if the objections were meritorious it would alter the sentences appropriately." (*Gonzalez*, *supra*, 31 Cal.4th at p. 755, italics added.)

at pp. 846-847 [a trial court "will be required to specify reasons for its sentencing decision, but will not be required to cite 'facts' that support its decision or to weigh aggravating and mitigating circumstances"]; *People v. Black*, *supra*, 41 Cal.4th at p. 813 [existence of a single aggravating factor is legally sufficient to support imposition of an upper prison term].)

### III. *LIFETIME SEX OFFENDER REGISTRATION ORDER*

Last, Flores contends the court erred by ordering him under Penal Code section 290 to register for life as a sex offender.   We reject this contention.

### A. *Background*

The Sex Offender Registration Act (Pen. Code, § 290 et seq.) (Act) allows *discretionary* sex offender registration for defendants convicted of unlawful sexual intercourse with a minor (Pen. Code, §§ 261.5, 290.006),[7] but imposes *mandatory* sex offender registration for defendants convicted of crimes involving other types of sexual

---

7      Penal Code section 261.5, subdivision (a) provides:  "Unlawful sexual intercourse is an act of sexual intercourse accomplished with a person who is not the spouse of the perpetrator, if the person is a minor.  For the purposes of this section, a 'minor' is a person under the age of 18 years and an 'adult' is a person who is at least 18 years of age."  Penal Code section 290.006 provides:  "Any person ordered by any court to register pursuant to the Act for any offense not included specifically in subdivision (c) of Section 290, shall so register, if the court finds at the time of conviction or sentencing that the person committed the offense as a result of sexual compulsion or for purposes of sexual gratification.  The court shall state on the record the reasons for its findings and the reasons for requiring registration."

25

activity with a minor (Pen. Code, § 290, subds. (b),[8] (c)[9]). (*Johnson v. Dept. of Justice* (2015) 60 Cal.4th 871, 874 (*Johnson*).)

In this case, Flores was convicted in November 2014 of one count of oral copulation by a person over 21 years old with a person under 16 years old (Derek) in violation of Penal Code section 288a, subdivision (b)(2), one of the listed sex offenses for which lifetime sex offender registration is mandatory under the Act. (Pen. Code, § 290, subds. (b), (c).) Flores committed this sex offense in late 2013.

At sentencing in February 2015, the court, citing *Johnson, supra,* 60 Cal.4th 871, which had been decided in January of that year, ordered Flores to register as a sex offender under the mandatory registration provisions Penal Code section 290, finding it "ha[d] no discretion." The court also found that, even if it had discretion under Penal Code section 290, "based on the facts and circumstances, what took place in this case,

---

[8]     Penal Code section 290, subdivision (b) provides: "*Every person described in subdivision* (*c*)*, for the rest of his or her life* while residing in California, or while attending school or working in California, as described in Sections 290.002 and 290.01, *shall be required to register* with the chief of police of the city in which he or she is residing, or the sheriff of the county if he or she is residing in an unincorporated area or city that has no police department, and, additionally, with the chief of police of a campus of the University of California, the California State University, or community college if he or she is residing upon the campus or in any of its facilities, within five working days of coming into, or changing his or her residence within, any city, county, or city and county, or campus in which he or she temporarily resides, and shall be required to register thereafter *in accordance with the Act*." (Italics added.)

[9]     As pertinent here, Penal Code section 290, subdivision (c) provides: "The following persons shall be required to register: [¶] Any person who . . . is . . . convicted in any court in this state . . . of . . . any act punishable under Section . . . 288a."

how long it took and [Flores's] grooming [of Derek] that took place, it is an appropriate case for lifetime [sex offender] registration."

B. *Analysis*

The law regarding mandatory sex offender registration under Penal Code section 290 was in a state of flux during the time this case was moving forward in the trial court. When Flores committed his sex offense against Derek in late 2013, the California Supreme Court's decision in *People v. Hofsheier* (2006) 37 Cal.4th 1185 applied. In *Hofsheier*, the defendant claimed the provision in Penal Code section 290 for *mandatory* sex offender registration of persons convicted of nonforcible oral copulation with a minor 16 or 17 years of age (Pen. Code, § 288a, subd. (b)(1)) violated his rights under the equal protection clauses of the federal and state Constitutions because persons convicted of the seemingly more serious crime of unlawful sexual intercourse with a minor of 16 or 17 years of age (Pen. Code, § 261.5) were subject to *discretionary* sex offender registration under former section 290, subdivision (a)(2)(E) (now section 290.006). The Supreme Court agreed and held in *Hofsheier* that the mandatory lifetime sex offender registration requirement set forth in Penal Code section 290 for persons convicted of violating Penal Code section 288a, subdivision (b) violated the equal protection clauses of the federal and state Constitutions. (*Hofsheier*, *supra*, 37 Cal.4th at pp. 1192-1193, 1206-1207.)

However, in January 2015—the month before Flores was sentenced in this case—the Supreme Court disapproved *Hofsheier* in *Johnson*, *supra*, 60 Cal.4th 871,

27

thereby restoring the mandatory sex offender registration requirement for offenders like Flores who violate Penal Code section 288a. Addressing the issue of whether its decision should apply retroactively, the *Johnson* court observed that "[a] decision of a court overruling a prior decision is typically given full retroactive effect." (*Johnson*, *supra*, 60 Cal.4th at p. 888.) The Supreme Court explained that there is "no reason to deny retroactive application where, as here, a sex offender has taken no action in justifiable reliance on the overruled decision." (*Id*. at p. 889.) The Supreme Court concluded there was "no unfairness or inequity in rejecting [the defendant's] equal protection challenge based on [its] overruling of *Hofsheier*" (*ibid.*) because the defendant had pleaded guilty to his offense in 1990, he initialed and signed a declaration acknowledging his obligation to register as a sex offender under Penal Code section 290, and *Hofsheier* was decided in 2006. (*Johnson*, at p. 889.) Thus, the defendant's "decision to plead [guilty] and his obligation to register as a sex offender did not result from any reliance on the state of the law as [it] articulated in *Hofsheier*." (*Ibid*.) In a footnote, the *Johnson* court indicated it was not deciding whether its "decision overruling *Hofsheier* should be given retroactive application in all cases." (*Id*. at p. 889, fn. 11.)

Here, Flores contends the court's order imposing the sex offender registration requirement should be reversed because "it would be unfair to [retroactively] apply the *Johnson* decision to require [him] to register as a sex offender because his conviction of oral copulation in violation of Penal Code section 288a[, subdivision]

28

(b)(2) and the attendant [mandatory] requirement that he register is the result of reliance on the ruling in *Hofsheier*."  He asserts that when he allegedly committed this offense in December 2013, and when he was convicted of this offense in November 2014, under *Hofsheier* "mandatory registration under Penal Code section 290 was not required because it violated a defendant's right to equal protection of the law and *Johnson* had not yet been decided."

In response, the Attorney General argues that Flores "does not explain how his conviction was the result of his reliance on the ruling in *Hofsheier*."  The Attorney General further argues that "[i]f [Flores] is saying that he would not have orally copulated Derek but for *Hofsheier*, there is unsurprisingly no evidence in the record supporting such an absurdity."

In his reply brief, Flores reiterates it would be unfair to retroactively apply the holding in *Johnson* because, "[i]f [he] had known that the law would change to require mandatory sex offender registration he may have decided to work out a plea agreement long before the law changed and pled guilty to something to avoid the registration requirement."

We reject Flores's claim that the court's retroactive application of *Johnson* at sentencing in this case was "unfair" and erroneous.  "A decision of a court overruling a prior decision is typically given full retroactive effect."  (*Johnson*, *supra*, 60 Cal.4th at p. 888.)  The Supreme Court explained in *Johnson* that there is "no reason to deny retroactive application where . . . a sex offender has taken *no action in justifiable reliance on the overruled decision*."  (*Id*. at p. 889, italics added.)  Here, there is nothing in the

record to suggest that Flores justifiably relied on the overruled *Hofsheier* decision. There is only Flores's own unsupported assertion on appeal that "[i]f [he] had known that the law would change to require mandatory sex offender registration he may have decided to work out a plea agreement long before the law changed and pled guilty to something to avoid the registration requirement." We conclude that Flores's unsupported assertion on appeal is insufficient to show that he justifiably relied on *Hofsheier*. (See *Johnson*, at p. 889.) Thus, we also conclude that *Johnson* retroactively applies in this case, and, thus, the court properly imposed the mandatory sex offender registration requirement under Penal Code section 290, subdivisions (b) and (c).

In light of our conclusions, we need not address Flores's additional claim that "[he] should be relieved from the trial court's finding under its discretionary authority that he must register." We also reject his contention that *Hofsheier* was correctly decided and, thus, "imposition of the mandatory [sex offender] registration requirement in [his] case violates [his] Fourteenth Amendment right to equal protection of the laws." We are bound by the decisions of our Supreme Court, including its *Johnson* decision overruling *Hofsheier*. (*Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455.)

For all of the foregoing reasons, we affirm the order requiring Flores under Penal Code section 290 to register for life as a sex offender.

DISPOSITION

The judgment is affirmed.

NARES, J.

WE CONCUR:

McCONNELL, P. J.

McINTYRE, J.